IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICKY MATLOCK and BRIDGET MATLOCK,<br><br>Plaintiffs,<br><br>v.<br><br>ROUNDPOINT MORTGAGE SERVICING CORPORATION, EMBRACE HOME LOANS, INC., and LOANCARE LLC<br><br>Defendants. | Case No. 3:18-cv-00047<br>Judge William L. Campbell, Jr.<br>Magistrate Judge Newbern |

## JOINT DISCOVERY DISPUTE STATEMENT

COMES NOW, Ricky and Bridget Matlock ("Plaintiffs") and LoanCare, LLC ("LoanCare"), and files this Joint Discovery Dispute Statement in accordance with the Court's Amended Case Management Order [Doc. 44].

## DISCOVERY REQUESTS IN DISPUTE

The Plaintiffs are disputing LoanCare's objections to the following discovery requests, which are attached hereto as **Exhibit "A"**: Interrogatory Nos. 3, 4, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19; Document Request Nos. 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23.

## CERTIFICATION OF EFFORTS TO RESOLVE DISPUTE

The undersigned lead counsel for Plaintiffs and LoanCare certify that they held a face-to-face meeting in Nashville, TN on April 3, 2019, to attempt to resolve this discovery dispute. Despite good faith efforts by both sides, the dispute could not be resolved.

## LOANCARE'S POSITION

The Amended Complaint contains a single count under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605 *et seq.* Within that claim, the Plaintiffs contend that "Defendants failed to make timely payment of the premium for the State Farm homeowners insurance policy 92-B4-U476-2 in violation 12 U.S.C. § 2605(g) and in violation of 12 C.F.R. § 1024.34." [Doc. 33] at ¶ 25. The Plaintiffs also allege that "Defendants received a Notice of Error which is a qualified written request on July 27, 2017, and Defendants failed to acknowledge receipt of same in violation of 12 U.S.C. § 2605(e)(1)(A).[1]

This claim centers on the fact that in November 2016, State Farm issued a renewal invoice that was due on January 15, 2017, but that the invoice went unpaid until February 24, 2017, by which time the policy was cancelled. Insurance premiums were escrowed through their mortgage loan, and it was the responsibility of the loan servicer to pay the premium. The Plaintiffs suffered a fire on February 17, 2017, and when they attempted to make a claim, discovered that the policy had been cancelled due to non-payment. Notably, the Plaintiffs admit in the Amended Complaint that RoundPoint was their loan servicer when the invoice was due, *see* [Doc. 44] at ¶ 9, and that it was RoundPoint who failed to pay the premium, *id.* at ¶ 16.

Outside the allegations in the Amended Complaint, LoanCare has acknowledged that it was the servicer of the loan prior to RoundPoint, but that it ceased being the servicer on February 2, 2016. LoanCare is again the servicer, but it did not obtain servicing rights again until September 5, 2017. It has also provided documentation to the Plaintiffs that evidence the transfer of servicing to RoundPoint by providing them with a copy of the notice of transfer of servicing

---

[1] There is no dispute that the Notice of Error claim is only against RoundPoint, and therefore this statement focuses only on the Plaintiffs' attempt to hold LoanCare liable under 12 U.S.C. § 2605(g) and in violation of 12 C.F.R. § 1024.34. Nothing contained in this statement should be construed as an admission that the Amended Complaint states a claim against LoanCare for such violations, as it contends that it does not and a Motion to Dismiss to that effect is pending.

to RoundPoint, which is required to be sent by 12 U.S.C. § 2605(c). This information was first provided to the Plaintiffs' counsel on October 16, 2018, which was just one week after LoanCare made its first appearance in the case.

Under 12 U.S.C. § 2605(g) (emphasis added),

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, ***the servicer*** shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

The related federal regulated, 12 C.F.R. § 1024.34 is identical. RESPA goes on to define "servicer" as "the person responsible for servicing of a loan," 12 U.S.C. § 2605(i)(2), and "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* at (i)(3).

While there are a number of discovery requests at issue here, the dispute can be broadly characterized as a relevancy and proportionality dispute. The requests seek discovery concerning items such as LoanCare's practices and procedures regarding payment of insurance premiums, prior lawsuits against LoanCare involving failure to pay insurance premiums, steps taken by LoanCare to ensure that the Plaintiffs' premium was paid, communications with insurers, and employee training relating to payment of insurance premiums. LoanCare objected to these requests as being irrelevant and disproportional, as it was not the loan servicer at the time that the insurance premium went unpaid.

> Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party is entitled to seek discovery of any non-privileged matter that is relevant to his or her claims and proportional to the needs of the case. The December 2015 amendment to Rule 26 reinforced the proportionality factors for defining the scope of discovery and, thus, under the amended Rule 26, relevancy alone is no longer sufficient to obtain discovery. *See* Fed. R. Civ. P. 26(b)(1) advisory committee notes to 2015 amendment. Accordingly, parties must conduct a cost-benefit analysis weighing the importance of the issue to the outcome of the case, the amount at stake in the case, the parties' resources, and their relative access to the information. *Id.* Thus, only evidence that is "relevant to any party's claim or defense" is within the scope of permissible discovery. *Id.*; *Medicinova Inc. v. Genzyme Corp.*, No. 14-cv-2513-L (KSC), 2017 WL 2829691, at *5 (S.D. Cal. June 29, 2017) ("The test going forward is whether evidence is 'relevant to any party's claim or defense,' not whether it is 'reasonably calculated to lead to admissible evidence.' ") (quoting *In re Bard IVC Filters Prods. Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016)).

*Loftis v. Ramos*, No. 16-CV-2300-MMA (DHB), 2018 WL 1444859, at *1 (S.D. Cal. Mar. 20, 2018).

Using this new standard, the Plaintiffs' requests are not relevant or proportional. The only issue at hand is whether "the servicer" in November 2016, December 2016, and January 2017 failed to pay State Farm for an insurance renewal. *See* 12 U.S.C. § 2605(g). "The servicer" was RoundPoint, and this has been proven by LoanCare and acknowledged by the Plaintiffs in their Amended Complaint. Nothing that LoanCare did during its term as servicer can be used in any way to prove or disprove a 2605(g) violation because it had no duty under RESPA to pay insurance premiums in late 2016 or early 2017. As such, the discovery requests at issue are not relevant to the Plaintiffs' claim.

During the meeting with Plaintiffs' counsel to discuss and attempt to resolve the discovery dispute, Plaintiffs' counsel countered this argument by stating that he does not know for sure that LoanCare was not the servicer and believes that there could have been *two* servicers responsible for paying the insurance premium, and that perhaps LoanCare still had

responsibilities to the Plaintiffs after servicing was transferred to RoundPoint. This is a nonsensical assertion that is counter to the Amended Complaint, common sense, and the plain language of RESPA.

12 U.S.C. § 2605(g) requires "*the servicer*" and not "the servicer**s**" or "a servicer" to pay insurance premiums. RESPA further provides that a notice be sent when servicing is transferred from <u>one</u> servicer to another, and the notice advising the Plaintiffs that LoanCare was no longer servicing the loan has been provided to the Plaintiffs. Allowing multiple simultaneous servicers would wreak havoc on the consumer protection provisions of RESPA and there is no law whatsoever that allows for this. Further, common sense must play into a relevancy and proportionality discussion, or else litigants could make up hypotheticals and "what ifs" – possible or not – to no end to fish for further discovery. Claiming that there could have been two servicers is just one example, because it is simply not possible. Anyone who has ever had a loan knows that there are not multiple servicers sharing the same (or even different) responsibilities, and the undersigned is aware of no real-world example of this. Even the Plaintiffs know that they had one loan servicer at a time, and plainly admitted in their Amended Complaint that it was RoundPoint that did not pay the premium.

Quite simply, it is irrelevant and disproportional to the needs of the case to ask LoanCare to disclose information such as its policies and procedures, employee training, and payment of insurance it was not required to pay. This information has absolutely no bearing on whether *RoundPoint* failed to pay an insurance premium in violation of RESPA. LoanCare's objections are appropriate.

**PLAINTIFFS' POSITION**

The discovery sought is highly relevant to the claims and defenses in this action.

Initially, Plaintiffs note that Defendants were solely responsible for the repeated transfers of servicing rights and responsibilities relating to Plaintiffs' mortgage, as Plaintiffs had no input or control over the manner in which Defendants effectuated these transfers. Plaintiffs have not missed a mortgage payment.

Although Loancare contends that it is absolved of responsibility as a matter of law because the servicing rights had been transferred prior to the incident in which the subject insurance premium was not paid, Loancare nevertheless refuses to produce the agreements that purport to establish this defense. While Loancare notes that Plaintiffs were provided a letter notifying them that the servicing rights had been transferred, the notice letter itself doesn't transfer anything, and Plaintiffs are entitled to obtain the actual agreements themselves. Clearly, these documents are relevant to Plaintiffs' claims as well as Loancare's defense, and Loancare should be required to produce them. *See* Fed.R.Civ.Pro. 26(b)(1) and *In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 563 (D. Ariz. 2016) (allowing discovery of any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case).

Additionally, the circumstances surrounding the transfers of the servicing rights and responsibilities are highly relevant to Plaintiffs' claims. The manner in which these transfers took place directly led to the confusion that resulted in the failure to pay the subject insurance premium, and the resolution of this case should be made in the context of a complete factual record.

In addition to the language contained in the various servicing agreements, all of Loancare's conduct in connection with Plaintiffs' loan is relevant, and Plaintiffs are entitled to conduct discovery to develop a factual record of how Loancare and the other defendants actually

serviced Plaintiffs' loan. These facts are especially important, particularly with respect to the payment of insurance premiums on Plaintiffs' policy with State Farm as well as the policy Defendants obtained with Great American Insurance Group after Defendants failed to pay the premium on Plaintiffs' State Farm policy.

While Loancare contends that the subject discovery is not proportional to the needs of the case, it does not explain how the burden associated with providing the material "outweighs its likely benefit." Fed.R.Civ.Pro. 26(b)(1). Indeed, Loancare does not even describe how responding to this discovery constitutes an undue burden. Instead, Loancare contends that it should not have to respond to discovery because it claims it was not the servicer who failed to make the subject insurance payment. Under these circumstances, this discovery is not only relevant, it is crucial to developing a factual record concerning the most important issues in this case, and this Court should order Loancare to provide complete responses immediately.

Respectfully submitted, this 5th day of April, 2019.

<u>/s/ Bret J. Chaness</u>
BRET J. CHANESS (BPR # 31643)
**RUBIN LUBLIN TN, PLLC**
3140 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
(678) 281-2730 (Telephone)
(404) 921-9016 (Facsimile)
bchaness@rubinlublin.com

*Attorney for LoanCare, LLC*

<u>/s/ Patrick Barrett</u>
Patrick Barrett (BPR # 020394)
Barrett Law Office, PLLC
4205 Hillsboro Pike
Suite 303
Nashville, Tennessee 37215
(615) 463-4000
*pbarrett@barrettlawofficetn.com*

/s/ Henry Todd, Jr.
Henry Todd, Jr. (BPR # 005574)
Todd & Spencer
404 East College Street
Dickson, Tennessee 37055
Nashville, TN 37214
(615) 446-0511
henrytoddjr@bellsouth.net

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed and served upon the following counsel via the Court's electronic filing system on this 5th day of April, 2019.

Shaun K. Ramey
McGlinchey Stafford
424 Church Street, Suite 2000
Nashville, TN 37219
sramey@mcglinchey.com

Bret J. Chaness
Rubin Lublin TN, PLLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, Georgia 30071
bchaness@rubinlublin.com


/s/ Patrick Barrett

8