IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICKY MATLOCK and BRIDGET MATLOCK,<br><br>　　Plaintiffs,<br><br>v.<br><br>ROUNDPOINT MORTGAGE SERVICING CORPORATION, EMBRACE HOME LOANS, INC., and LOANCARE, LLC,<br><br>　　Defendants. | Case No. 3:18-cv-00047<br>Judge William L. Campbell, Jr.<br>Magistrate Judge Newbern |

## LOANCARE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW, LoanCare, LLC ("LoanCare"), and files this Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c), respectfully showing this Honorable Court as follows:

### INTRODUCTION

In this case, Plaintiffs Ricky and Bridget Matlock seek to hold LoanCare liable under the Real Estate Settlement Procedures Act ("RESPA") because their homeowners' insurance premium, which was due in January 2017, went unpaid. However, the undisputed facts show that LoanCare was not their loan servicer in January 2017 and had not been for almost a year. Because RESPA requires only the servicer at the time an insurance premium is due to make that payment, LoanCare is not liable under RESPA.

### STATEMENT OF FACTS

On December 4, 2012, Plaintiffs Ricky S. Matlock and Bridget Matlock obtained a mortgage loan from Embrace Home Loans, Inc. in the amount of $84,400.00 (the "Loan"). The

1

Loan was secured by conveying the real property at 1153 Gallian Road, Cumberland Furnace, Tennessee via deed of trust to Mark A. Rosser, as Trustee for Mortgage Electronic Registration Systems. Inc. as nominee for Embrace Home Loans, Inc., its successors and assigns. *See* Statement of Undisputed Facts ("SUF") at ¶ 1. (the "Deed of Trust").

LoanCare first became involved with the Loan on April 1, 2013, when servicing of the Loan was transferred from Central Loan Administration and Reporting to LoanCare. *Id.* at ¶ 2. LoanCare remained the servicer until February 2, 2016, when servicing of the Loan was transferred from LoanCare to RoundPoint Mortgage Servicing Corporation ("RoundPoint"). *Id.* at ¶ 3. Between February 2016 and September 2017, the Plaintiffs agree that RoundPoint was the only entity collecting Loan payments from them. *Id.* at ¶ 5. On September 5, 2017, servicing of the Loan was transferred from RoundPoint back to LoanCare. *Id.* at ¶ 4.

Beginning in January 2014, the Plaintiffs had a homeowners' insurance issued by State Farm Fire and Casualty Company. *Id.* at ¶ 6. This was an automatically renewable policy. *Id.* The Loan was escrowed and funds to pay homeowners' insurance premiums were held in an escrow account by the Loan servicer pursuant to the terms of the Deed of Trust. *Id.* at ¶ 7. After servicing of the Loan was transferred to RoundPoint, a renewal premium was due on January 15, 2017, but went unpaid and the insurance policy was cancelled for non-payment of the premium. *Id.* at ¶ 8. Bridget Matlock testified that only the entity that should have paid an insurance premium in January 2017 was RoundPoint. *Id.* at ¶ 9. After the policy was cancelled, there was a fire at an outbuilding on the Property. *Id.* at ¶ 10.

This fire precipitated the litigation with the Plaintiffs suing LoanCare, RoundPoint, and Embrace Home Loans, Inc. under RESPA. They contend that all the

2

> Defendants failed to make timely payment of the premium for the State Farm homeowners insurance policy number 92--B4-U476-2 in violation of 12 U.S.C. § 2605(g) and in violation of 12 CFR § 1024.34. As a direct and proximate result of Defendants' omissions, Plaintiffs suffered actual damages in the form of uninsured losses arising from damage to the structure and damage to the contents of the structure that would have been insured at a replacement cost value.

[Doc. 33] at ¶ 24.

However, LoanCare was not the servicer when the premium went unpaid, and therefore had no obligation under RESPA to pay the premium. LoanCare is entitled to judgment in its favor.

## ARGUMENT AND CITATION OF AUTHORITY

### A. STANDARD OF REVIEW

Under Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, "the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). The inquiry performed is the determination of whether there are any genuine factual issues that may reasonably be resolved in favor of either party by a finder of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, the "mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *Chapman*, 229 F.3d at 1023.

On summary judgment, the Plaintiff may not merely rest on his allegations absent any significant probative evidence tending to support the Complaint. *Anderson,* 477 U.S. at 249; quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290 (1968). One of

3

the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex*, 477 U.S. at 323–24. Therefore, "[s]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Chapman*, 229 F.3d at 1023.

**B.    LOANCARE WAS NOT THE SERVICER IN JANAURY 2017 AND THEREFORE HAD NO DUTIES UNDER RESPA TO PAY FOR INSURANCE**

The only claim in the Complaint against LoanCare is for failure to pay the State Farm insurance premium in January 2017 "in violation of 12 U.S.C. § 2605(g) and in violation of 12 CFR § 1024.34." [Doc. 33] at ¶ 24. Pursuant to 12 U.S.C. § 2605(g) (emphasis added),

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, ***the servicer shall make payments*** from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due. Any balance in any such account that is within the servicer's control at the time the loan is paid off shall be promptly returned to the borrower within 20 business days or credited to a similar account for a new mortgage loan to the borrower with the same lender.

The federal regulation, 12 C.F.R. § 1024.34, imposes nearly the same requirements, and states that "the servicer shall make payments from the escrow account in a timely manner, that is, on or before the deadline to avoid a penalty, as governed by the requirements in § 1024.17(k)." "*Servicer* means a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan." 12 C.F.R. § 1024.2. Likewise,

> *Servicing* means receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan, including amounts for escrow accounts under section 10 of RESPA (12 U.S.C. 2609), and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the

4

> borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract. In the case of a home equity conversion mortgage or reverse mortgage as referenced in this section, servicing includes making payments to the borrower.

*Id.*

The statute and corresponding regulations make clear that only the servicer has the obligation to make escrow payments for taxes and insurance (if an escrow account has been established), and that the servicer is the entity "receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan." *Id.* As of January 15, 2017, the servicer was RoundPoint, not LoanCare. LoanCare had not been the servicer since February 2, 2016. Thus, LoanCare was under no obligation to pay State Farm for the insurance premium. In fact, Plaintiff Bridget Matlock outright admitted this in her deposition. The Plaintiffs' sole claim against LoanCare under RESPA fails as a matter of law, and summary judgment should be granted in favor of LoanCare.

## **CONCLUSION**

Based on the foregoing, LoanCare respectfully requests that this Court grant its Motion for Summary Judgment.

Respectfully submitted, this 19th day of July 2019.

>  */s/ Bret J. Chaness*
> BRET J. CHANESS (BPR # 31643)
> **RUBIN LUBLIN TN, PLLC**
> 3140 Avalon Ridge Place, Suite 100
> Peachtree Corners, GA 30071
> (678) 281-2730 (Telephone)
> (404) 921-9016 (Facsimile)
> bchaness@rubinlublin.com
>
> *Attorney for LoanCare, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 19th day of July 2019, filed the within and foregoing by CM/ECF, which will serve notice on all parties

*/s/ Bret J. Chaness*
BRET J. CHANESS (BPR # 31643)