# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| RICKY MATLOCK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | NO. 3:18-cv-00047 |
| ) | |
| ROUNDPOINT MORTGAGE ) | JUDGE CAMPBELL |
| SERVICING CORPORATION, et al., ) | MAGISTRATE JUDGE NEWBERN |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court is the Motion for Summary Judgement filed by Defendant LoanCare, LLC ("LoanCare") (Doc. No. 76), and the Motion for Summary Judgment filed by Defendants RoundPoint Mortgage Servicing Corporation ("RoundPoint") and Embrace Home Loans, Inc. ("Embrace") (Doc. No. 79). Plaintiffs filed Responses in Opposition (Doc. Nos. 88, 91) and Defendants filed Replies. (Doc. Nos. 98, 102). For the reasons discussed below, the Motion for Summary Judgement filed by Defendants RoundPoint and Embrace is **DENIED** in part and **GRANTED** in part, and Defendant LoanCare's Motion for Summary Judgment is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2012, Plaintiffs obtained a federally related mortgage loan from Defendant Embrace. (Doc. No. 92 ¶ 1). In addition to being the lender, Embrace owned the mortgage servicing rights in connection with Plaintiffs' mortgage loan. (Doc. No. 100 ¶¶ 1, 3). Embrace transferred the servicing rights of Plaintiffs' loan multiple times between 2012 and 2017. Cenlar was the original sub-servicer of Plaintiffs' loan until April 2013, when Embrace transferred the sub-servicing rights of approximately 60,000 loans, including Plaintiffs', to Defendant LoanCare. (Doc. No. 97 ¶¶ 4-9; Doc. No. 100 ¶¶ 4-9). Defendant LoanCare was the sub-servicer of Plaintiffs'

mortgage from April 1, 2013 through February 1, 2016. (Doc. No. 97 ¶¶ 4-5, 10; Doc. No. 100 ¶¶ 4-5, 10; Doc. No. 92 ¶ 2). In February 2016, Embrace transferred the sub-servicing rights of approximately 50,000 loans, including Plaintiffs', to Defendant RoundPoint. (Doc. No. 97 ¶¶ 10-11; Doc. No. 100 ¶¶ 10-11). Defendant RoundPoint was the sub-servicer of Plaintiffs' mortgage from February 2, 2016 to September 5, 2017, at which point Plaintiffs' loan was sold and the sub-servicing rights were transferred back to Defendant LoanCare as part of another bulk transfer. (Doc. No. 89 ¶ 9; Doc. No. 97 ¶ 12; Doc. No. 100 ¶ 12).

Throughout the duration of the loan, payments for taxes and insurance have been made from Plaintiffs' escrow account. (Doc. No. 97 ¶ 22; Doc. No. 100 ¶ 22; Doc. No. 89 ¶ 5). Plaintiffs always made their mortgage payments in a timely fashion. (Doc. No. 97 ¶ 24; Doc. No. 100 ¶ 24).

Beginning in January 2014, the Plaintiffs had a homeowners' insurance policy issued by State Farm Fire and Casualty Company ("State Farm"). (Doc. No. 89 ¶ 4). Plaintiffs' insurance policy with State Farm provided coverage for the structure as well as contents. (Doc. No. 97 ¶ 21; Doc. No. 100 ¶ 21). When the servicing rights were transferred from LoanCare to RoundPoint in 2016, RoundPoint received "a State Farm policy that was in effect [and] that was paid by LoanCare in January of 2016, that policy number, the amount of the policy, the premium, [and] general hazard information." (Doc. No. 97 ¶ 25; Doc. No. 100 ¶ 25).

In December of 2016, LoanCare received a bill form State Farm for Plaintiffs' hazard insurance policy. (Doc. No. 97 ¶ 46; Doc. No. 100 ¶ 46). The premium for Plaintiffs' hazard insurance policy with State Farm for 2017 was due on January 15, 2017. (Doc. No. 89 ¶ 12). LoanCare did not communicate with RoundPoint, State Farm, or Plaintiffs about the bill it had received for Plaintiffs' hazard insurance. (Doc. No. 97 ¶¶ 48-52; Doc. No. 100 ¶¶ 48-52).

Plaintiffs' insurance premium was not paid, and Plaintiffs' hazard insurance policy with State Farm was canceled for nonpayment on February 14, 2017. (Doc. No. 97 ¶ 53; Doc. No. 100 ¶ 53). On February 17, 2017, there was a fire at the subject property that damaged the building and some of its contents. (Doc. No. 97 ¶ 54; Doc. No. 100 ¶ 54). Plaintiffs did not learn that the State Farm policy had been canceled until after the fire. (Doc. No. 97 ¶ 55; Doc. No. 100 ¶ 55).

Defendant RoundPoint was the sub-servicer of Plaintiffs' loan at the time Plaintiffs' hazard insurance premium with State Farm was due and went unpaid. (Doc. No. 89 ¶ 9). As the sub-servicer, RoundPoint was responsible for collecting Plaintiffs' mortgage payments, monitoring and tracking hazard insurance requirements, and paying hazard insurance premiums. (Doc. No. 97 ¶¶ 13, 23, 27; Doc. No. 100 ¶¶ 13, 23, 27). RoundPoint first became aware that it was not listed as the mortgagee on the Plaintiffs' State Farm insurance policy in September of 2016. (Doc. No. 89 ¶ 21). At the time the bill had not been sent, RoundPoint knew that State Farm was the relevant insurer for Plaintiffs' insurance policy. (Doc. No. 100 ¶ 68). Although RoundPoint did not communicate with State Farm about the missing bill, it did obtain a lender placed insurance policy that covered the structure but not the contents. (Doc. No. 100 ¶ 83). RoundPoint did not have "a reasonable basis to conclude that the Matlocks had failed to comply with the contractual requirement to maintain hazard insurance." (Doc. No. 100 ¶ 84).

On September 7, 2018, Plaintiffs filed an Amended Complaint in this action alleging violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA") and its implementing regulation, Regulation X. (Doc. No. 33). Specifically, Plaintiffs claim Defendants violated Section 2605(g) of RESPA and Section 1024.34 of Regulation X by failing to timely pay the premium for their homeowners' insurance policy.[1] (Doc. No. 33 ¶ 24).

---

[1] By Order (Doc. Nos. 66, 67) entered on May 29, 2019, the Court dismissed Plaintiffs' claim under 12 U.S.C. § 2605(e).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## III. ANALYSIS

### A. RESPA

RESPA is a consumer protection statute that regulates the real estate settlement process, including the conduct of "servicers" of federally related mortgage loans. 12 U.S.C, § 2601(a); *see*

*Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (noting "the scope of the statute's provisions was expanded in 1990 to encompass loan servicing"). A "servicer" is the "person responsible for the servicing of a federally related mortgage loan...." 12 C.F.R. § 1024.2(b). "Servicing" a loan is defined as:

> …receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan, including amounts for escrow accounts under section 10 of RESPA (12 U.S.C. 2609), and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract….

12 C.F.R. § 1024.2(b). RESPA requires servicers to comply with the obligations specified in Section 2605, including provisions concerning the administration of escrow accounts, as well regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") to carry out the statute's purpose. 12 U.S.C. § 2605(a)-(m). One such implementing regulation, the Mortgage Servicing Rules under the Real Estate Settlement Procedures Act ("Regulation X"), was repromulgated by the CFPB in 2013 with new rules providing borrowers with additional protections regarding hazard insurance that became effective on January 10, 2014. *See* Regulation X, 78 Fed. Reg. 10696-01 (February 14, 2013) (codified at 12 C.F.R. pt. 1024).

Section 2605(g) of RESPA provides:

> (g) Administration of escrow accounts
>
> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, **the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due**. Any balance in any such account that is within the servicer's control at the time the loan is paid off shall be promptly returned to the borrower within 20

business days or credited to a similar account for a new mortgage loan to the borrower with the same lender.

12 U.S.C. § 2605(g) (emphasis added). Section 1024.34(a) of Regulation X provides that making payments from the escrow account "in a timely manner" means making the payment in time to avoid any penalty:

> Timely escrow disbursements required. If the terms of a mortgage loan require the borrower to make payments to the servicer of the mortgage loan for deposit into an escrow account to pay taxes, insurance premiums, and other charges for the mortgaged property, **the servicer shall make payments from the escrow account in a timely manner, that is, on or before the deadline to avoid a penalty, as governed by the requirements in § 1024.17(k)**.

12 C.F.R. § 1024.34(a) (emphasis added). Section 1024.17(k) of Regulation X requires the servicer of the loan to advance funds in order to make disbursements in a timely manner and sets forth additional requirements with respect to loan servicers making timely payments of hazard insurance:

> (1) If the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, **the servicer must pay the disbursements in a timely manner, that is, on or before the deadline to avoid a penalty, as long as the borrower's payment is not more than 30 days overdue.**
>
> (2) **The servicer must advance funds to make disbursements in a timely manner as long as the borrower's payment is not more than 30 days overdue.** Upon advancing funds to pay a disbursement, the servicer may seek repayment from the borrower for the deficiency pursuant to paragraph (f) of this section.
>
> * * *
>
> (5) Timely payment of hazard insurance—
>
> (i) In general. Except as provided in paragraph (k)(5)(iii) of this section, with respect to a borrower whose mortgage payment is more than 30 days overdue, but who has established an escrow account for the payment for hazard insurance, as defined in § 1024.31, a servicer may not purchase force-

> > placed insurance, as that term is defined in § 1024.37(a), unless a servicer is unable to disburse funds from the borrower's escrow account to ensure that the borrower's hazard insurance premium charges are paid in a timely manner.
>
> > (ii) Inability to disburse funds—
>
> > > A. When inability exists. A servicer is considered unable to disburse funds from a borrower's escrow account to ensure that the borrower's hazard insurance premiums are paid in a timely manner **only if the servicer has a reasonable basis to believe either that the borrower's hazard insurance has been canceled (or was not renewed) for reasons other than nonpayment of premium charges or that the borrower's property is vacant.**
>
> > > B. When inability does not exist. A servicer shall not be considered unable to disburse funds from the borrower's escrow account because the escrow account contains insufficient funds for paying hazard insurance premium charges.

12 C.F.R. § 1024.17(k) (emphasis added). As a remedial statute, RESPA is construed broadly to effectuate its purposes. *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013). "Whoever fails to comply with any provision of [Section 2605] shall be liable to the borrower for each such failure[.]" 12 US.C. § 2605(f).

   1. Defendant Embrace

Defendant Embrace argues it is entitled to summary judgment because it was not the servicer of Plaintiffs' loan at the time the premium was due and went unpaid, and therefore had no obligation to pay the premium under Section 2605(g) of RESPA or corresponding sections of Regulation X. (Doc. No. 81 at 10-11). Specifically, Embrace contends that it was not a servicer because it did not receive "scheduled periodic payments" at the time the State Farm premium was

due and went unpaid in January of 2017. (Doc. No. 81 at 11 (citing 12 C.F.R. § 1024.2's definition of "Servicing")).

In Response, Plaintiffs do not dispute that Embrace was not the servicer of their loan. Nor do Plaintiffs argue that Embrace had an obligation to pay their hazard premium under RESPA. Instead, Plaintiffs assert that Embrace is liable for the failure to pay the hazard insurance premium. (Doc. No. 88 at 16-17). Plaintiffs cite no authority for this position and fail to develop any legal argument or analysis in support. While Plaintiffs note that Embrace owned the servicing rights of Plaintiffs' loan and that the sub-servicers acted as Embrace's agents when servicing the loan, they offer no explanation or analysis as to how or why those facts render Embrace liable under Section 2605(g) of RESPA or Section 1024.34 of Regulation X. (Doc. No. 88 at 16-17).

Similarly, Plaintiffs contend that "there are material issues of fact relating to the extent to which Embrace's conduct contributed to the failure to pay the insurance premium" but fail to elaborate on how such factual issues are material to the outcome of their claim against Embrace under Section 2605(g) of RESPA and Section 1024.34 of Regulation X for failing to pay an insurance premium that the parties agree Embrace had no obligation to pay. *Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 448 (6th Cir. 2002) ("Facts are 'material' only if establishment thereof might affect the outcome of the lawsuit under governing substantive law.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The Court finds that under the plain language of Section 2605(g) of RESPA and Sections 1024.34 and 1024.17(k) of Regulation X, only the loan servicer had an obligation to pay Plaintiffs' State Farm premium. As noted above, the parties agree that Embrace was not the servicer of

Plaintiffs' loan at the time the State Farm premium was due and went unpaid. Accordingly, the Court **GRANTS** summary judgment to Defendant Embrace.

2. Defendant LoanCare

LoanCare also asserts that it is entitled to summary judgment because it was not servicing Plaintiffs' loan at the time the premium went unpaid, and therefore it did not have an obligation under RESPA or Regulation X to pay Plaintiffs' State Farm premium. (Doc. No. 77 at 4-5). In Response, Plaintiffs do not dispute that LoanCare was not the servicer of their loan at the time the State Farm premium went unpaid. Nor do Plaintiffs argue that LoanCare had an obligation to pay their State Farm premium under RESPA. Instead, Plaintiffs assert that "[p]ursuant to 12 C.F.R. § 1024.2, LoanCare's failure to comply with the operative servicing contract subjects it to liability under RESPA for the failure to pay Plaintiffs' hazard insurance premium." (Doc. No. 91 at 16).

While Plaintiffs argue that the servicing instructions required LoanCare to forward all necessary insurance information to RoundPoint and also notify State Farm about the transfer and request the mortgagee name change, they fail to develop any argument or analysis as to how or why those facts render LoanCare liable under the general definition section of Regulation X, 12 C.F.R. § 1024.2, Section 2605(g) of RESPA, or Section 1024.34 of Regulation X. "It is not enough for a party to mention a possible argument in the most skeletal way and leave the court to put flesh on its bones." *Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017) (internal citations and quotation marks are omitted). Significantly, Plaintiffs' Response also fails to address how or why LoanCare can be held liable under RESPA 2605(g) for failing to pay an insurance premium the parties agree it had no obligation to pay.

The Court finds that under the plain language of Section 2605(g) of RESPA and Sections 1024.34 and 1024.17(k) of Regulation X, only the loan servicer had an obligation to pay Plaintiffs'

State Farm premium. As noted above, the parties agree that LoanCare was not the servicer of Plaintiffs' loan at the time the State Farm premium was due and went unpaid. Accordingly, the Court **GRANTS** summary judgment to Defendant LoanCare.

3. Defendant RoundPoint

It is undisputed that RoundPoint was the servicer of Plaintiffs' loan at the time Plaintiffs' hazard insurance premium with State Farm was due and went unpaid. (Doc. No. 89 ¶ 9; Doc. No. 97 ¶ 53; Doc. No. 100 ¶ 53). Nevertheless, RoundPoint argues that it is entitled to summary judgment because it "took reasonable steps to try to fulfill its obligations under 2605(g) of RESPA." (Doc. No. 81 at 15).

However, RoundPoint's argument fails to consider the obligations imposed on loan servicers under Regulation X with respect to managing escrow accounts and the timely payment of hazard insurance. As noted above, Regulation X requires the loan servicer to pay disbursements before the deadline to avoid a penalty and to advance funds to make distributions in a timely manner, as long as the borrowers are not more than 30 days behind on their payments. 12 C.F.R. §§ 1024.17(k)(1)-(2), 1324.34. Moreover, "[a] servicer is considered unable to disburse funds from a borrower's escrow account to ensure that the borrower's hazard insurance premiums are paid in a timely manner *only* if the servicer has a reasonable basis to believe either that the borrower's hazard insurance has been canceled (or was not renewed) for reasons other than nonpayment of premium charges or that the borrower's property is vacant." 12 C.F.R. § 1024.17(k)(5)(ii)(A) (emphasis added).

The two cases relied upon by RoundPoint in support of its position, *Webb v. Chase Manhattan Mortg. Corp.*, No. 2:05-CV-0548, 2008 WL 2230696 (S.D. Ohio May 28, 2008) and *Hyderi v. Wash. Mut. Bank, F.A.*, 235 F.R.D. 390 (N.D. Ill., 2006), are not persuasive as both

predate the 2013 rules promulgated in Regulation X regarding hazard insurance which are material to the issues in this case.[2]

The Court finds that RoundPoint's argument for summary judgment fails as a matter of law under the plain language of Section 2605(g) of RESPA and Sections 1024.34 and 1024.17(k) of Regulation X. Further, the Court finds that numerous disputed facts make summary judgment in RoundPoint's favor inappropriate. Accordingly, the Court **DENIES** Defendant RoundPoint's Motion for Summary Judgment.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR
UNITED STATES DISTRICT JUDGE

---

[2] The Court also notes that the statements *Webb* relied upon from *Hyderi* are dicta as they were unnecessary to the *Hyderi*'s court's ultimate decision. *See Richmond Health Facilities v. Nichols*, 811 F.3d 192, 201 n.8 (6th Cir. 2016). The *Hyderi* court denied class certification of RESPA claims because "the proposed class issues have not been shown to predominate over those individualized issues that likely will need to be resolved." *Hyderi*, 235 F.R.D. at 403. Contrary to the *Webb* court's assertions, the *Hyderi* court did not hold that "RESPA does not necessarily impose strict edicts that operate without regard to the underlying facts, but rather indicates through its textual commands that fact-sensitive analysis is required." Nor did the court set forth a "reasonableness" standard for RESPA liability under Section 2605. Indeed, the *Hyderi* court expressly did not issue "any definitive ruling" on the meaning, scope, or statutory interpretation of RESPA Section 2605(g). *Hyderi*, 235 F.R.D. at 401, n. 9 ("Nonetheless, as stated earlier, the Court does not here rule on the scope of RESPA Section 2605(g) – much less its application in any and all instances.").