**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **RICKY MATLOCK and** | ) | |
| **BRIDGET MATLOCK,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No.: 3:18-cv-00047** |
| **v.** | ) | **Judge William L. Campbell, Jr.** |
| | ) | **Magistrate Alistair Newbern** |
| **ROUNDPOINT MORTGAGE SERVICING** | ) | |
| **CORPORATION; EMBRACE HOME** | ) | |
| **LOANS, INC.; and LOANCARE, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF ROUNDPOINT MORTGAGE**</u>
<u>**SERVICING CORPORATION'S MOTIONS IN LIMINE**</u>

Shaun K. Ramey
Joseph V. Ronderos
McGlinchey Stafford
424 Church Street, Suite 2000
Nashville, TN 37219
sramey@mcglinchey.com
jronderos@mcglinchey.com
*Attorneys For RoundPoint Mortgage Servicing*
*Corporation*

2810415.5

# TABLE OF CONTENTS

**Page**

1.  MOTION IN LIMINE 1: Great American Insurance Policy ("Lender-Placed Insurance Policy") and Related Testimony..........................................................................1

2.  MOTION IN LIMINE 2: Letter Responding to Notice of Error by Plaintiffs. .................5

3.  MOTION IN LIMINE 3: Testimony As To The Ultimate Issue Of Compliance With RESPA And Regulation X...........................................................................6

4.  MOTION IN LIMINE 4: LoanCare's Policies and Procedures and Servicing Agreement...........................................................................................9

5.  MOTION IN LIMINE 5: Testimony of LoanCare's Corporate Representative Regarding Knowledge of RoundPoint's System. ............................................12

6.  MOTION IN LIMINE 6: Records Of Servicers Other Than RoundPoint That Do Not Reference or Concern RoundPoint Including the 2013 Transfer Notice Between The Other Servicers. ...........................................................................12

7.  MOTION IN LIMINE 7: Any Exhibit Not Disclosed During Discovery. .......................13

8.  MOTION IN LIMINE 8: Any Prior Lawsuits Against RoundPoint. ..............................14

9.  MOTION IN LIMINE 9: Offers Of Compromise Or Settlement....................................14

10. MOTION IN LIMINE 10: RoundPoint's Wealth Or Financial Condition.......................15

11. MOTION IN LIMINE 11: Records And Documents Not Properly Authenticated And For Which A Foundation Is Not Property Laid. .......................................16

12. MOTION IN LIMINE 12: Improper Testimony By Lay Witnesses. ..............................16

13. MOTION IN LIMINE 13: Undisclosed Expert Opinions. .............................................17

14. MOTION IN LIMINE 14: Failure To Call Any Witnesses.............................................18

15. MOTION IN LIMINE 15: Hearsay. ..............................................................................18

i

1. **MOTION IN LIMINE 1: Great American Insurance Policy ("Lender-Placed Insurance Policy") and Related Testimony.**

This Court should prohibit any evidence, documentary or testimonial, statements, or arguments that purports to suggest liability or wrongdoing on behalf of RoundPoint Mortgage Servicing Corporation ("RoundPoint") by securing the Great American Insurance Policy ("Lender-Placed Insurance Policy"), considering this policy was secured as a subsequent remedial measure, as well as an expression of sympathy, that is unreliable evidence. FED. R. EVID. 407; (Plaintiffs' Statement of Additional Material Facts ["Plaintiffs' STAT"]) ¶ (Deposition of Scott Johnson ["Johnson Depo"] pp. 19–21). Federal Rule of Evidence 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

FED. R. EVID. 407. "Rule 407 applies only to subsequent remedial measures taken voluntarily by the defendant." In re Air Crash Disaster, 86 F.3d 498, 529 (6th Cir. 1996) **"[T]he rule bars a class of evidence that is very poor proof of negligence or defectiveness."** (citing 2 Weinstein's Evidence § 407, 13–14 (finding in the unreliability of such evidence a primary purpose of the rule))); see Dusenbery v. U.S., 534 U.S. 161, 172 (U.S. 2002) ("Other areas of the law, moreover, have for strong policy reasons resisted rules crediting the notion that, "'because the world gets wiser as it gets older, therefore it was foolish before.'" (quoting Advisory Committee's Notes on Fed. Rule Evid. 407, 28 U.S.C. App., p. 864 (1994 ed.) (quoting Hart v. Lancashire & Yorkshire R. Co., 21 Law Times Rep. (n. s.) 261, 263 (1869), and explaining that Rule 407's prohibition

1

against use of subsequent remedial measures to prove fault attempts to avoid discouraging persons from taking steps to further safety))).

The testimony at issue is summarized in Plaintiffs' Statement of Additional Material Facts:

> 83.    **Although Roundpoint did not communicate with State Farm about the missing bill, it did obtain a lender placed insurance policy from Great American that covered the structure but not the contents**. (Johnson depo, p. 19-21). . . .
>
> 85.    Roundpoint waived the fee for the Great American policy because "Roundpoint from a customer service perspective could have went above and beyond and they did not." (Johnson depo, p. 104). . . .
>
> 86.    Roundpoint waived the fee for the Great American policy because "our third-party insurance vendor did not make phone calls to verify your insurance information." (DEF/MATLOCK 330-331). . . .
>
> 87.    Great American charged Roundpoint $4.00 for the policy. (Johnson depo, p. 116-117).

(Plaintiffs' STAT, ¶¶ 83, 85–87) (emphasis added).

The deposition testimony of RoundPoint's representative was in response to questions about "corrective measures" and any actions to "remediate any actual harm". (Depo. Johnson pp. 20:25–22:17). RoundPoint purchased the Lender-Placed Insurance Policy to "protect the asset", and furthermore, the reason that RoundPoint did not charge the Plaintiffs for the Lender-Placed Insurance Policy was that "RoundPoint could have went above and beyond" the duties to pay the Plaintiffs' hazard insurance but did not. (Depo. Johnson pp. 103:9–104:6). Thus, it is clear that the Lender-Placed Insurance Policy was a subsequent remedial measure to protect the asset against further hazards and not due to any error on behalf of RoundPoint. Nevertheless, Plaintiffs may seek to admit this evidence as proof of liability or wrongdoing, considering that RoundPoint did not charge Plaintiffs for the Lender-Placed Insurance Policy. Accordingly, evidence related to this subsequent remedial measure would be unreliable and unfairly prejudicial to RoundPoint.

Moreover, this Court should not permit Plaintiffs to introduce this evidence and testimony for another purpose under Rule 407, such as "ownership, control, or feasibility of precautionary

2

measures" because as noted in the policy itself and the deposition testimony, the Lender-Placed Insurance Policy did not provide coverage for the Plaintiffs' personal belongings, which are the only compensatory damages at issue in this lawsuit. (Depo. Johnson pp. 19–21; 101–104) (noting that the Lender-Placed Insurance Policy covered the structure, to protect the asset, and does not cover the contents); (DEF/MATLOCK 263) (noting that the named insured is RoundPoint). Consequently, this purported evidence cannot constitute proof of feasibility or control of a precautionary measure under FED. R. EVID. 407, thus further rendering the purported evidence irrelevant under FED. R. EVID. 402. Indeed, the purpose of lender-placed insurance policies is only to provide protection to the structure (i.e., the lender's "asset") and not the contents. See 12 C.F.R. § 1024.37(a) ("the term 'force-placed insurance' means hazard insurance obtained by a servicer **on behalf of the owner or assignee of a mortgage loan** that insures the property securing such loan"); see also Weiser v. Great American Insurance Company, 2020 WL 1853572, at *2 (E.D. Pa. 2020) (evaluating a lender-placed insurance policy as insuring the mortgagee as the insured, and not the contents of the mortgagor); Harnarrine v. Praetorian Insurance Company, 2019 WL 8508084, at *2 (S.D. Fla. 2019) (explaining that the lender-placed insurance policy covers the structure to protect the insured mortgagee's interest, not the borrower's); Lumpkins v. Balboa Ins. Co., 812 F.Supp.2d 1280, 1285 (N.D. Okla. 2011) (same).

Further, this Court should not permit Plaintiffs to introduce this testimony for another purpose under Rule 407, such as "ownership, control, or feasibility of precautionary measures", because this other purpose would lead to an inference of liability such that it would be unfairly prejudicial to RoundPoint, potentially misleading the jury to conclude that RoundPoint was negligent or culpable for its actions leading up to the fire/loss at issue. See FED. R. EVID. 403. For instance, if Plaintiffs were allowed to elicit testimony that RoundPoint was capable of or had

3

control of securing a Lender-Placed Insurance Policy prior to the fire, a jury may infer that RoundPoint **should** have secured a Lender-Placed Insurance Policy prior to the fire and that sauch a policy would have protected the Plaintiffs' personal belongings. Indeed, such testimony would be misleading since RESPA and Regulation X do not impose a duty to secure a Lender-Placed Insurance Policy. Further, Plaintiffs have not alleged such wrongdoing, considering that the only duty under RESPA and Regulation X is that "the servicer shall **make payments** from the escrow account". 12 U.S.C. § 2605(g) (emphasis added).

In addition, it is clear that this evidence arises out of expressions of sympathy, not as an admission of error, fault, or wrongdoing, as set forth in RoundPoint's Response to Plaintiffs' Notice of Error by letter dated September 8, 2017 ("NOE Response Letter"), which reads, in pertinent part, as follows:

> "Please accept our sincerest condolences . . . . Unfortunately, since we did not receive the requested information, your policy canceled due to nonpayment on February 14, 2017 . . . . As out third-party insurance did not make phone calls to verify your insurance information, a Lender Placed Insurance certificate was issued to cover your insurance claim at no cost to you. Please accept our apologies for not contacting you for your policy information by phone."

(DEF/MATLOCK 330). Similar to the rationale behind Rule 409, this evidence is unreliable and would likely mislead a jury on whether the Lender-Placed Insurance Policy was in response to an error or as a humanitarian effort to assist the Plaintiffs out of sympathy. Compare FED. R. EVID. 409, Comments ("[G]enerally, evidence of payment of medical, hospital, or similar expenses of an injured party by the opposing party, is not admissible, **the reason often given being that such payment or offer is usually made from humane impulses and not from an admission of liability, and that to hold otherwise would tend to discourage assistance to the injured person.**" (quoting 20 A.L.R.2d 291, 293)) (emphasis added). The Lender-Placed Insurance Policy

4

is the definition of a subsequent remedial measure and thus, is unreliable. For the foregoing

reasons, this Court should exclude evidence related to the Lender-Placed Insurance Policy.

**2.      MOTION IN LIMINE 2: Letter Responding to Notice of Error by Plaintiffs.**

The Court should prohibit the admission of RoundPoint's NOE Response Letter (Plaintiffs'

STAT, ¶¶ 83, 85–89); (DEF/MATLOCK 330), and any evidence, argument, or statements related

thereto. First, for the reasons set forth in Motion in Limine 1, *infra*, the Court should prohibit the

admission of the NOE Response Letter as a subsequent remedial measure that is not capable of

being introduced for another purpose, such as "ownership, control, or feasibility of precautionary

measures", FED. R. EVID. 407, 402, and as expressions of sympathy that make for unreliable

evidence.

In addition to grounds set forth in Motion in Limine 1 above, RoundPoint moves to prohibit

admission of the NOE Response Letter based upon relevancy, pursuant to FED. R. EVID. 402, as

this Court ordered the dismissal of Plaintiffs' claims based upon 12 U.S.C. § 2605(e), which was

a claim for RoundPoint's alleged failure to respond to Plaintiffs' notice of error. (Doc. 66, PageID

# 390). "Any evidence solely relating to the previously-dismissed claims would be irrelevant to

this case[.]" Jeffries v. Emerson Industrial Automation, 2015 WL 11019143, at *4 (W.D. Tenn.

2015); see also Davis v. Siemens Medical Solutions USA, Inc., 279 Fed. Appx. 378, 380 (6th Cir.

2008) (recognizing that evidence related to a dismissed claim should be excluded unless such

evidence also relates to a remaining claim); Securities and Exchange Commission v. Goldstone,

2016 WL 3625405, at *17 (D.N.M. 2016) (same). The remaining issue in this action is whether

RoundPoint was obligated to pay the premium for Plaintiffs' hazard insurance in advance of the

date of loss, not whether RoundPoint properly responded to Plaintiffs' notice of error after the date

of loss. 12 U.S.C. § 2605(g). Because the NOE Response Letter only relates to  RoundPoint's

response to Plaintiffs' notice of error, the NOE Response Letter is irrelevant to Plaintiffs'

remaining claim, which is, again, based upon RoundPoint's alleged duty to make a disbursement to pay Plaintiffs' insurance. See 12 U.S.C. 2605(g). Furthermore, even if there were some relevancy to the NOE Response Letter, any probative value would be substantially outweighed by the unfair prejudice to RoundPoint, potentially misleading the jury to resolve a question of complying with escrow/insurance requirements under RESPA and Regulation X as to whether RoundPoint appropriately responded to Plaintiffs' notice of error and if that response was an admission of fault. Thus, admitting the fact that RoundPoint did not charge the Plaintiffs for the Lender-Placed Insurance Policy, as detailed within the NOE Response Letter, would be unfairly prejudicial to RoundPoint because, again, the jury may construe these subsequent remedial measures of RoundPoint as an admission of wrongdoing, even though it is clear that RoundPoint was protecting its asset, while, at the same time, discounting the Lender-Placed Insurance Policy out of sympathy for the Plaintiffs' loss. Consequently, this Court should prohibit any evidence, testimony, statements, or arguments concerning the NOE Response Letter.

3.     **MOTION IN LIMINE 3: Testimony As To The Ultimate Issue Of Compliance With RESPA And Regulation X.**

        This Court should prohibit Plaintiffs from introducing any testimony, evidence, statements, or arguments pertaining to an ultimate issue to be decided by the trier of fact. FED. R. EVID. 704. A witness is prohibited from telling "the jury what result to reach" or testifying "to the legal implications of conduct." Woods v. Lecureux, 110 F.3d 1215, 1221 (6th Cir. 1997) ("For a witness to stack inference upon inference and then state an opinion regarding the ultimate issue is even more likely to be unhelpful to the trier of fact."); see also U.S. v. Sheffey, 57 F.3d 1419, 1425 (6th Cir. 1995) (Rule 704 removes the general "proscription against opinions on 'ultimate issues' and shift[s] the focus to whether the testimony is 'otherwise admissible.'").

        The ultimate issue is whether RoundPoint was "considered unable to disburse funds from

a borrower's escrow account to ensure that the borrower's hazard insurance premiums are paid in a timely manner". 12 C.F.R. § 1024.17(k)(5)(ii)(A). In particular, the issue is whether RoundPoint's actions or inactions are consistent with the duties under RESPA and Regulation X, including, but not limited to, the following examples under Regulation X:

> 1. **Examples of reasonable basis to believe that a policy has been cancelled or not renewed.** The following are examples of where a servicer *has a reasonable basis to believe that a borrower's hazard insurance policy has been canceled or not renewed for reasons other than the nonpayment of premium charges*:
>
>> i. A borrower notifies a servicer that the borrower has cancelled the hazard insurance coverage, and the servicer has not received notification of other hazard insurance coverage.
>>
>> ii. A servicer receives a notification of cancellation or non-renewal from the borrower's insurance company before payment is due on the borrower's hazard insurance.
>>
>> iii. A servicer does not receive a payment notice by the expiration date of the borrower's hazard insurance policy.

12 C.F.R. § 1024.17(k)(5), Supplement I to Part 1024 ("This commentary is the primary vehicle by which the Bureau of Consumer Financial Protection issues official interpretations of Regulation X").

It is believed that Plaintiffs will attempt to introduce the deposition testimony of RoundPoint's corporate representative and elicit similar testimony related to the following proposed statement of fact:

> 84.    Embrace and Roundpoint did not have "a reasonable basis to conclude that the Matlocks had failed to comply with the contractual requirement to maintain hazard."

(Plaintiffs' STAT ¶ 84) (citing Johnson Depo, p. 20) (See also Johnson Depo, pp. 94:24–95:5 ["If the servicing rights had not been transferred from LoanCare to RoundPoint is it fair to assume that this insurance bill would have been paid? . . . With Loancare – or with State Farm maintaining Loancare as the mortgagee, yet, it's safe to assume"]). It is important to note that this testimony

7

was not made in response to whether RoundPoint had a reasonable basis to conclude that the Plaintiffs had not maintained hazard insurance *prior* to the fire, but rather, this testimony was in response to whether RoundPoint knew the Plaintiffs had hazard insurance at the time the Lender-Placed Insurance Policy "was originated", which was *after* RoundPoint was aware of the Plaintiffs' hazard insurance lapsing and during the time RoundPoint was taking remedial measures. (Johnson Depo, pp. 20:6–20:10). Nevertheless, it is believed that Plaintiffs would attempt to introduce this deposition testimony as it is framed in their Statement of Undisputed Material Fact—that is, as to the ultimate issue outside of context—without permitting the jury to reach its own conclusion, which would mislead the jury as to *when* RoundPoint knew that the Plaintiffs had not failed to maintain hazard insurance.

Similarly, it is believed that Plaintiffs will attempt to introduce the deposition testimony of LoanCare's corporate representative where she explicitly concludes and opines that it was RoundPoint's responsibility to pay Plaintiffs' insurance. (Bielby Depo., pp. 89:19–89:22 ["They have the same obligations as LoanCare to service that loan and pay that insurance"]); (Bielby Depo., pp. 140:6–140:14 ["Does LoanCare believe RoundPoint made a mistake in not paying the insurance bill? . . . Is that an opinion? I think it was RoundPoint's duty to pay the insurance when it became due. And that is LoanCare's position"]); (See also Bielby Depo., pp. 60:17–61:1 ["Ok. Is it unreasonable for the Matlocks to expect that the required insurance information is transferred along with the servicing rights at the time of transfer?"]).  Consequently, in addition to prohibiting the introduction of this deposition testimony, this Court should prohibit Plaintiffs from offering similar evidence or attempting to elicit similar testimony that states the result the jury should reach or the legal implications of RoundPoint's alleged conduct as the ultimate issue in this action.

8

4.      **MOTION IN LIMINE 4: LoanCare's Policies and Procedures and Servicing Agreement.**

This Court should exclude the deposition testimony of LoanCare, LLC's ("LoanCare") corporate representative, along with any other evidence related thereto, concerning LoanCare's policies and procedures and servicing agreement that detail the measures LoanCare takes when missing a bill for hazard insurance.[1] Any policies or procedures implemented by LoanCare, with respect to its methods of evaluating the payment of hazard insurance upon a servicing transfer, would only serve to confuse the issue of RoundPoint's compliance with RESPA and Regulation X, which is the only issue that is relevant. See Old Chief v. United States, 519 U.S. 172, 181 (1997) ("The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." (quoting Michelson v. United States, 335 U.S. 469, 475–76 (1948)). In particular, this Court should prohibit Plaintiffs from introducing the deposition of LoanCare's corporate representative to the extent it concerns LoanCare's policy and procedure for calling an insurance company when LoanCare has anticipated receiving a hazard insurance bill, but has not received such bill. FED. R. EVID. 401.

In particular, this Court should exclude testimony where Plaintiffs seek to compare or a comparison is drawn between LoanCare's policies and procedures and RoundPoint's; especially, where the comparison involves LoanCare's policy of calling an insurance company to ensure that hazard insurance is paid upon a servicing transfer. (See Deposition of Allison Bielby ["Depo Bielby"] 83:24-91:24); (See e.g., Depo Bielby ["So**, assuming their procedures are closely related**, when that policy comes up for expire -- it expired or is coming up for expiring, and we don't have the new information, LoanCare will contact that insurance company or agent, as

---

[1]      LoanCare is no longer a party to this action. (Doc. 113–14).

9

applicable, and request that information."] (Id. at 84:14–21) [emphasis added]). By comparing LoanCare's policies and procedures to RoundPoint's, this testimony is clearly speculative since LoanCare "assumes" the procedures of LoanCare and RoundPoint are closely related, further speculating as to what RoundPoint would or should have done upon not receiving a bill for hazard insurance. FED. R. EVID. 602, 702. Indeed, there is a difference between the policies and procedures of RoundPoint and LoanCare in that LoanCare "call(s)" the insurance company when LoanCare does not have an insurance bill for payment. (Bielby Depo., pp. 85–87). In stating this policy, LoanCare maintains that "we're going to try to do what we have to do to get the insurance paid." (Id. at 87). The difference in levels of customer service, when addressing the issue of a missing insurance bill, does not provide any value in determining what actions comply with RESPA and Regulation X. Therefore, the fact that LoanCare "call(s)" the insurance company (at least, according to its policies and procedures), contrasted with the fact that RoundPoint faxes an insurance company if it has that company's contact information, can only serve to unfairly prejudice RoundPoint by distracting the jury as to the actual issue in this case, which is whether RoundPoint met the standard under RESPA and Regulation X, not whether it met LoanCare's standards.

Any probative value of this evidence is substantially outweighed by the danger of unfair prejudice (imputing another servicer's policies and procedures to RoundPoint), confusing the issues (which strictly relate to compliance with RESPA), and, ultimately, misleading the jury by permitting them to evaluate RoundPoint's compliance with LoanCare's policies and procedures as opposed to complying with RESPA, Regulation X, or its own policies and procedures. FED. R. EVID. 403. Consequently, this Court should prohibit Plaintiffs from introducing the deposition of

10

LoanCare's corporate representative with respect to the testimony concerning its policies and procedures.

This Court should also prohibit the deposition testimony of LoanCare's corporate representative as not meeting the criteria for an expert opinion and being insufficient to establish an industry standard. It is believed that Plaintiffs will seek to introduce the deposition testimony regarding LoanCare's policies and procedures in an attempt to establish an industry standard for transferring a loan between servicers and, in particular, whether the transferor servicers rely upon the borrower(s) to update their hazard insurance information and for the servicer to call the insurance company if not in possession of an insurance bill. (Bielby Depo. pp. 61–62, 84–91); (Matlock 0084). While it is true that "[a] jury could deduce an industry standard from testimony based on the **practices of individual *companies*** within the industry", Jack Henry & Associates, Inc. v. BSC, Inc., 487 Fed.Appx. 246, 254 (6th Cir. 2012) (emphasis added), evaluating one servicer's policies and procedures cannot be construed as an industry standard. To otherwise admit these policies and procedures would require Plaintiffs to prove that the testimony of LoanCare's corporate representative meets the Daubert criteria for reliability, which Plaintiffs have not done, let alone disclose LoanCare's corporate representative as an expert. Id. at 254, n. 4 (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)); see also Simmerman v. Ace Bayou Corp., 2016 WL 109944, at *1 (E.D.Ky. 2016) ("Because the defendants did not timely disclose Dr. Rolf as an expert witness, the plaintiffs' motion in limine will be granted insofar as it seeks to limit her testimony to lay testimony under Rule 701 of the Federal Rules of Evidence."). For this additional reason, this Court should exclude the deposition testimony of LoanCare's corporate representative, along with any other evidence related thereto,

11

concerning LoanCare's policies and procedures and servicing agreement that detail the measures LoanCare takes when missing a bill for hazard insurance.

5.      **MOTION IN LIMINE 5: Testimony of LoanCare's Corporate Representative Regarding Knowledge of RoundPoint's System.**

This Court should prohibit any evidence, statements, or argument related to LoanCare's understanding of RoundPoint's internal systems and information. LoanCare's corporate representative testified that: "Roundpoint has the exact same system [MSP]. **So they would have the exact same information that a policy is coming up for expiring**. . . . Roundpoint has the same information knowing that policy is expired." (Depo Bielby 84:22–84:25, 89:15–17). LoanCare's corporate representative was not competent to testify to what information RoundPoint had during the events described in this action, because LoanCare's corporate representative did not establish that she had personal knowledge of RoundPoint's system and the information within that system at that time of these events. FED. R. EVID. 601, 602. Therefore, this Court should prohibit Plaintiffs from introducing LoanCare's deposition testimony with respect to information not within its personal knowledge, including, but not limited to, whether and when RoundPoint knew that the subject insurance policy was going to expire.

6.      **MOTION IN LIMINE 6: Records Of Servicers Other Than RoundPoint That Do Not Reference or Concern RoundPoint Including the 2013 Transfer Notice Between The Other Servicers.**

This Court should prohibit any evidence, statements, or arguments related to correspondence or records from servicers other than RoundPoint that relate to the servicing of the loan by that other servicer, which do not otherwise involve or reference RoundPoint, or which concern the transfer of the servicing between other servicers as such records would be irrelevant as RoundPoint is the only remaining defendant in this action. (Doc. 113–114); FED. R. EVID. 402. In particular, the Notice of Transfer of Servicing Rights dated March 13, 2013 (the "2013 Transfer

Notice") (Matlock 0083–0084), as well as the testimony related to this notice in the Deposition of Allison Bielby, as corporate representative of LoanCare ("Bielby Depo.") (Bielby Depo. 57:18–62:6), are irrelevant and should be excluded by this Court as they concern a notice of servicing transfer between LoanCare and another servicer, Cenlar, which is not a party to this action. Furthermore, such evidence is due to be excluded to the extent Plaintiffs seek to introduce LoanCare's 2013 Transfer Notice, along with the testimony of its corporate representative, in an attempt to establish an industry standard for transferring a loan between servicers and, in particular, whether the transferor servicers rely upon the borrower(s) to update their hazard insurance information and for the servicer to call the insurance company if not in possession of an insurance bill. (Bielby Depo. pp. 61–62, 84–91); (Matlock 0084). For the same reasons as demonstrated in Motion in Limine 4 *infra*, this Court, at the very least, should exclude the 2013 Transfer Notice and the Bielby Depo. to the extent that Plaintiffs attempt to establish an industry standard with this record and testimony.

**7.     MOTION IN LIMINE 7: Any Exhibit Not Disclosed During Discovery.**

This Court should prohibit Plaintiffs from introducing any evidence, making any statements or arguments that were not disclosed during discovery. Rule 26(a)(1) requires a party to provide initial disclosures "without awaiting a discovery request" of copies of all documents that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims and defenses, unless solely for impeachment. FED. R. CIV. P. 26(a)(1). Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed." FED. R. CIV. P. 37(c)(1); see also Adams v. Farbota, 306 F.R.D. 563, 573 (M.D. Tenn. 2015) ("The court finds no basis to impose a lesser sanction than to preclude Dr. McCombs from offering expert testimony at trial. Without

13

justification, Adams failed to make a required expert disclosure on issues for which expert testimony is required."). Notably, Plaintiffs have not disclosed any evidence of a pattern or practice to support an award of additional damages. (MATLOCK 0001–0144). Therefore, this Court should prohibit Plaintiffs from offering or referencing any exhibits not disclosed during discovery.

8.      **MOTION IN LIMINE 8: Any Prior Lawsuits Against RoundPoint.**

This Court should prohibit Plaintiffs from introducing evidence, testimony, statements, or arguments pertaining to any prior lawsuits against RoundPoint. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b); see also Old Chief v. United States, 519 U.S. 172, 181 (1997) ("The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." (quoting Michelson v. United States, 335 U.S. 469, 475–76 (1948)). Plaintiffs have not alleged any pattern or practice and therefore, additional damages are not at issue in this action. See 12 U.S.C. § 2605(1)(B). Accordingly, RoundPoint's character is not "an essential element of a charge, claim, or defense" to permit evidence of specific instances of other lawsuits. FED. R. EVID. 405(b). Again, any probative value of this evidence is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403. Consequently, this Court should prohibit Plaintiffs from introducing evidence, testimony, statements, or arguments pertaining to any prior lawsuits against RoundPoint.

9.      **MOTION IN LIMINE 9: Offers Of Compromise Or Settlement.**

This Court should prohibit Plaintiffs from introducing evidence, testimony, statements, or arguments pertaining to any offer of compromise or settlement in this matter. It is black letter law that an offer of compromise by one party to another in a civil action, whether before or after the litigation has begun, is inadmissible. FED. R. EVID. 408; Stockman v. Oakcrest Dental Center, P.C.,

14

480 F.3d 791, 805 (6th Cir. 2007) ("While the instruction added a veneer of protection, we reject the proposition that any amount of evidence supporting liability, no matter how little, coupled with a limiting instruction read at any time during the trial is sufficient to cure the wrongful admission of Rule 408 evidence."). Moreover, any probative value that this evidence of offers of compromise or settlement may provide is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403.

**10.     MOTION IN LIMINE 10: RoundPoint's Wealth Or Financial Condition.**

This Court should prohibit Plaintiffs from introducing evidence, testimony, statements, or arguments pertaining to RoundPoint's wealth or financial condition. Honda Motor Co., Ltd. v. Oberg, 512 U.S. 415, 416 (U.S. 1994) ("[E]vidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses."); Chesser v. Fifth Third Bank, National Association, 2020 WL 3979586, at *7 (E.D. Ky. 2020) ("Insofar as evidence of Fifth Third's financial condition is actually relevant to any issue in this case, the Court agrees that its probative value is substantially outweighed by a risk of unfair prejudice because it could be used as an emotional appeal to the jury to find against a defendant who can afford to pay large damages to an individual Plaintiff."). Furthermore, the only potential damages at issue in this case concern compensatory damages suffered by the Plaintiffs, statutory damages, and attorneys' fees that might be awarded under RESPA. (Doc. 33, PageID# 187); 12 U.S.C. 2605(f); Sarsfield v. Citimortgage, Inc., 667 F.Supp.2d 461, 470 (M.D. Pa. 2009) ("A review of RESPA reveals that punitive damages are not authorized by the statute"). Further, Plaintiffs have not pled facts that indicate any intentional or reckless conduct necessary to establish punitive damages and have not requested punitive damages in this case (even assuming that punitive damages would be allowed), meaning that net worth would have no relevancy in this action. (Doc 33, PageID# 182–187); U.S. v. Autumn Ridge Condominium Ass'n, Inc., 265 F.R.D. 323, 326 (N.D. Ind. 2009) ("[A] plaintiff

15

may recover punitive damages, even where it fails to specifically request the damages, if sufficient facts supporting such an award are alleged in the complaint."). As such, nothing concerning RoundPoint's wealth or financial condition could be relevant to the issue of damages. Finally, any probative value of this evidence is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403. Consequently, this Court should prohibit Plaintiffs from introducing evidence, testimony, statements, or arguments pertaining to RoundPoint's wealth or financial condition.

11. **MOTION IN LIMINE 11: Records And Documents Not Properly Authenticated And For Which A Foundation Is Not Property Laid.**

This Court should prohibit Plaintiffs from introducing evidence, testimony, statements, or arguments pertaining to documents that have not been properly authenticated and for which a foundation is not properly laid. Any record or document that is not properly authenticated and for which a foundation is not properly laid should be excluded. FED. R. EVID. 803, 901; FED. R. CIV. P. 44. Without authentication or proper foundation, evidence is inadmissible. U.S. v. Simms, 351 Fed.Appx. 64, 68 (6th Cir. 2009) ("The Federal Rules of Evidence require evidence to be authenticated or identified through a showing 'sufficient to support a finding that the matter in question is what its proponent claims.' By way of example, this can be satisfied with testimony from a witness with knowledge of the matter.") (citations omitted). Consequently, this Court should prohibit Plaintiffs from introducing evidence, testimony, statements, or arguments pertaining to documents that have not been properly authenticated and for which a foundation is not properly laid.

12. **MOTION IN LIMINE 12: Improper Testimony By Lay Witnesses.**

This Court should prohibit Plaintiffs from introducing evidence, testimony, statements, or arguments pertaining to improper opinion testimony by a lay witness to which he or she is not properly qualified to testify. Fed R. Evid. 602, 701, 702. For example, it is believed that Plaintiffs

16

will attempt to introduce improper opinion testimony of LoanCare's corporate representative in her deposition, in which she opines that RoundPoint is responsible for the lapse in Plaintiffs' hazard insurance. (Bielby Depo., pp. 89:19–89:22 ["They have the same obligations as LoanCare to service that loan and pay that insurance"]); (Bielby Depo., pp. 140:6–140:14 ["Does LoanCare believe RoundPoint made a mistake in not paying the insurance bill? . . . Is that an opinion? I think it was RoundPoint's duty to pay the insurance when it became due. And that is LoanCare's position"]); (See also Bielby Depo., pp. 60:17–61:1 ["Ok. Is it unreasonable for the Matlocks to expect that the required insurance information is transferred along with the servicing rights at the time of transfer?"]; ["Is there another document that LoanCare sent to the Matlocks that gives them any instructions as it relates to hazard insurance?"]). To otherwise admit this evidence would require Plaintiffs to prove that the testimony of LoanCare's corporate representative meets the Daubert criteria for reliability, which Plaintiffs have not done, let alone disclose LoanCare's corporate representative as an expert. Jack Henry & Associates, Inc. v. BSC, Inc., 487 Fed.Appx. 246, 254, n.4 (6th Cir. 2012) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). This deposition testimony, along with any other improper opinion testimony, should be excluded.

**13.    MOTION IN LIMINE 13: Undisclosed Expert Opinions.**

This Court should prohibit Plaintiffs from introducing evidence, testimony, statements, or arguments pertaining to opinions of expert witnesses that have not been timely and properly disclosed. FED. R. CIV. P. 26(a)(2)(D); FED. R. CIV. P. 37(c)(1). Plaintiffs did not disclose any experts. Therefore, this Court should also prohibit any evidence, testimony, statements, or arguments that serve as a conduit for an undisclosed expert opinion. Schneider v. Molony, 418 Fed.Appx. 392, 395 (6th Cir. 2011) ("[I]f a party fails to disclose a document, the district court may prohibit use of the document at trial."); Simmerman v. Ace Bayou Corp., 2016 WL 109944,

at *1 (E.D. Ky. 2016) ("Because the defendants did not timely disclose Dr. Rolf as an expert witness, the plaintiffs' motion in limine will be granted insofar as it seeks to limit her testimony to lay testimony under Rule 701 of the Federal Rules of Evidence."). For example, Plaintiffs may attempt to introduce the undisclosed opinion testimony of LoanCare's corporate representative as detailed in Motion in Limine 12 *supra*. This deposition testimony, along with any other improper and undisclosed expert testimony, should be excluded.

14.    **MOTION IN LIMINE 14: Failure To Call Any Witnesses.**

This Court should prohibit Plaintiffs from commenting on RoundPoint's failure to call any witness(es). There are very limited circumstances—none of which apply here—that would permit Plaintiffs to comment on any witness that RoundPoint does not call. "No inference arises where the witness is available equally to both parties." Scripps-Howard Broadcasting Co., Inc. v. Regency Electronics, Inc., 1985 WL 13337, at *2 (6th Cir. 1985) (holding that a missing witness instruction is only appropriate when the party has exclusive control over the witness not called (citing Graves v. United States, 150 U.S. 118, 121 (1893)); see also U.S. v. Rawls, 48 Fed.Appx. 965, 965–66 (6th Cir. 2002) ("[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.") (quoting Graves v. United States, 150 U.S. 118 (1893)). An example of a witness is a representative of State Farm, which is not a party to this action. Consequently, this Court should prohibit Plaintiffs from commenting on RoundPoint's failure to call any witness(es).

15.    **MOTION IN LIMINE 15: Hearsay.**

This Court should prohibit Plaintiffs from offering testimony or otherwise introducing evidence that is inadmissible hearsay under Rule 802. FED. R. EVID. 802.

18

Respectfully submitted,

By: */s/Joseph V. Ronderos*
Shaun K. Ramey (TN Bar # 035574)
Joseph V. Ronderos (TN Bar # 036179)
McGlinchey Stafford, PLLC
424 Church Street, Suite 2000
Nashville, TN 37219
(615) 762-9041
Fax: (615) 523-1646
Email: sramey@mcglinchey.com
Email: jronderos@mcglinchey.com
*Attorneys for RoundPoint Mortgage Servicing*
*Corporation and Embrace Home Loans, Inc.*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been forwarded to the

following, by email on this 10th day of August, 2020:

Patrick Barrett, Esq.
Barrett Law Office, PLLC
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215
pbarrett@barrettlawofficetn.com

Henry Todd, Esq.
TODD & SPENCER
404 East College Street
Dickson, TN 37055
henrytoddjr@bellsouth.com

Bret J. Chaness, Esq.
RUBIN LUBLIN TN, PLLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
*Attorneys for LoanCare, LLC*
bchaness@rubinlublin.com

*/s/ Joseph V. Ronderos*
Joseph V. Ronderos

20