IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICKY MATLOCK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | NO. 3:18-cv-00047 |
| ) | |
| ROUNDPOINT MORTGAGE ) | JUDGE CAMPBELL |
| SERVICING CORPORATION, et al., ) | MAGISTRATE JUDGE NEWBERN |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant RoundPoint Mortgage Servicing Corporation ("RoundPoint") and Defendant Embrace Loans, Inc. ("Embrace") (collectively "Defendants") Renewed Motion to Seal. (Doc. No. 116). For the reasons stated herein, the motion is **DENIED**.

### I. PROCEDURAL BACKGROUND

The Court previously denied three motions to seal (Doc. Nos. 87, 95, 99) without prejudice to the parties refiling with the necessary analysis under *Shane Grp, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016). (Doc. No. 115). Defendants filed a renewed motion (Doc. No. 116) addressing only two documents, the Subservicing Agreement (Doc. No. 90-8; Doc. No. 93-8) and Defendants' Response to Plaintiffs' Statement of Additional Material Facts (Doc. No. 100). Defendants additionally propose the redaction of their Response (Doc. No. 100) which removes only the references to the Subservicing Agreement and Defendants' internal policies and procedures.

The Subservicing Agreement between RoundPoint and Embrace is a contract for services, outlining the rights and duties of the parties with regard to mortgage subservicing. (Doc. No. 116-1 ¶¶ 12, 13, 15). The contract requires each party to comply with an array of enumerated terms and

conditions. (*Id*. ¶ 14-23). "The information within the Subservicing Agreement is specific to the needs and performance of the parties thereto…" (*Id*. ¶ 26). Defendants argue that the Subservicing Agreement is a protectable trade secret and should therefore be sealed. (*Id*. ¶ 7).

## II.     STANDARD OF REVIEW

Courts have considerable discretion in managing their records. *See In re Knoxville News-Sentinel Co., Inc. v. Knoxville Journal Corp.*, 723 F.2d 470, 473 (6th Cir. 1983). The Sixth Circuit has held that a party seeking to seal a document from public view must provide "compelling reasons" to seal the document, and demonstrate that sealing is narrowly tailored to serve those reasons by analyzing "in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Shane Grp.,* 825 F.3d at 305–06 (6th Cir. 2016) (citing *Baxter Int'l Inc. v. Abbott Labs.,* 297 F.3d 544, 545 (7th Cir. 2002)). The burden is on the party designating the material as confidential. *Id*.

The standard to seal information from public view is higher than that required for protecting documents during discovery. *Beauchamp v. Fed. Home Loan Mortg. Corp.,* 658 F. App'x. 202, 207 (6th Cir. 2016). In making a determination, the Court weighs the "presumptive right of the public to inspect" judicial material with the interests of privacy. *In re Knoxville News* 723 F.2d at 473-74. Typically, in civil litigation, "'only trade secrets, information covered by a recognized privilege (such as attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault)'" are enough to overcome the presumption of access. *Shane Grp.*, 825 F.3d at 308. (citation omitted). "The fact that a document will reveal 'competitively-sensitive financial and negotiating information' is not an adequate justification for sealing – rather, 'the proponents of closure bears the burden of showing that disclosure will work a clearly defined and serious injury.'" *Kondash v. Kia Motors*

2

*America, Inc.,* 767 F. App'x. 635, 639 (6th Cir. 2019) (quoting *Shane Grp.,* 825 F.3d at 307). "[I]n delineating the injury to be prevented, specificity is essential." *Shane Grp.,* 825 F.3d at 308. (citation omitted). In ruling on a motion to seal, "the court must set forth its specific findings and conclusions 'which justify nondisclosure to the public.'" *Kondash*, F. App'x. at 637-38 (quoting *Shane Grp.,* 825 F.3d at 306).

### III.   ANALYSIS

#### A.   The Subservicing Agreement

Defendants move the Court to seal the Subservicing Agreement because it is a protectable trade secret. In ruling on the motion, the Court must first determine the existence of a trade secret. *Kondash*, 767 F. App'x at 638. Without citing case law or statute, Defendants address the necessary factors for establishing a trade secret. However, the Court is not persuaded that Defendants have satisfied the statutory requirements. The Federal Defend Trade Secrets Act ("DTSA") defines "trade secrets" as follows:

> (3) the term 'trade secret' means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> >
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).

Defendants argue that the Subservicing Agreement is protectable as a trade secret because the confidential information, if revealed, may cause them competitive disadvantage, and they have

3

made significant efforts to maintain the confidentiality of the documents. (Doc. No. 116-1 ¶¶ 23-27). First, Defendants assert that they go to great lengths to ensure that the Subservicing Agreement is kept confidential, including having employees sign non-disclosure agreements, only distributing the agreement to employees whose duties require it, and using data protection services to safeguard their documents. (Doc. No. 116 ¶ 23, 24). Defendants' efforts to maintain the confidentiality of their documents appear to satisfy the first requirement of the DTSA. It is the second requirement that concerns the Court.

Defendants allege that, should the seal be lifted, both RoundPoint and Embrace "may lose valuable and sensitive information [including] the loss of pricing information, the terms of renewal and/or cancellation, and other certain terms and conditions of the agreement." (Doc. No. 116 ¶ 27). They argue that the exposure may allow other companies to "engage in competitive trade practices against" Defendants. (*Id*.). The DTSA requires that a trade secret "derive[] independent economic value" by virtue of not being known or ascertainable by another party who may obtain economic value from its use or disclosure. 18 U.S.C. § 1839(3)(B). Defendants' arguments on this point are largely speculative. They only generally assert that they may suffer competitive disadvantage if the information in the Subservicing Agreement, such as their pricing and terms of renewal and cancellation, is used in competitive practices against them. Defendants do not explain or even provide a scenario demonstrating how they could be damaged. Accordingly, the Court finds that Defendants have failed to demonstrate that the contract is a trade secret.

Even if a party fails to establish that their document is a trade secret, the Court may still find compelling reasons to place it under seal. *Kondash*, 767 F. App'x. at 638. However, the burden is on the moving party to show a "clearly defined and serious injury." *Shane Grp.,* 825 F.3d at 307. "That a document will reveal 'competitively-sensitive financial and negotiating information' is not

4

an adequate justification for sealing". *Id*. Defendants bare assertions that sharing this information may place them at a competitive disadvantage fails to meet the standard. The Court therefore finds no compelling reason to keep the Subservicing Agreement under seal.

**B.     The Policies and Procedures**

Defendants additionally move to seal the Escrow Administration Policy and the Servicing Transfer Instructions appended to the Subservicing Agreement and referenced in their Response to Plaintiff's Statement of Additional Facts. (Doc. No. 100). Defendants assert that both documents contain confidential information used in implementing these policies and procedures. (Doc. No. 116 ¶¶ 29-32). Defendants further state that they take steps to prevent disclosure of this information, including having employees sign Confidentiality Agreements. (*Id*. ¶ 35). Though Defendants outline their protective measures, they do not point to a "clearly defined and serious injury." *Shane Grp.,* 825 F.3d at 307. As discussed above, this is insufficient to establish a basis for sealing. The Court finds that Defendants have not met their burden. Accordingly, the motion to seal the policies and procedures is denied.

**C.     The Master Services Agreement**

Defendants discuss the Master Services Agreement in a single paragraph. (Doc. No. 116-1 ¶ 28). They state that this agreement contains "highly confidential and commercial information" regarding a third party, Loan Protector. (*Id*.). Defendants do not indicate where in the record this document may be found or what portions of it should be sealed. Due to the scant information provided, the Court declines to consider the motion as it relates to this document.

## IV. CONCLUSION

Defendants have failed to meet the high burden established in *Shane Grp*. Accordingly, for the reasons stated herein, the Motion to Seal (Doc. No. 116) is **DENIED**. The Clerk is **DIRECTED** to unseal Doc. Nos. 88, 89, 90, 91, 92, 93, 96, and 100.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE